UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ABDUL KHABIR ARYAN,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN,<br>SAMUEL OLSON,<br>TODD BLANCHE,<br>JAILER,<br><br>Respondents. | ) | No. 2:26-cv-00604-MPB-MKK |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Noncitizen Abdul Khabir Aryan is detained at the Clay County Jail on behalf of U.S. Immigration and Customs Enforcement ("ICE"). Mr. Aryan seeks a writ of habeas corpus under 28 U.S.C. § 2241 requiring Respondents to release him from custody.

For the reasons explained below, the Court grants the petition to the extent that it orders Respondents to either afford Mr. Aryan a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations or release him from custody under reasonable conditions of supervision.

## I. Background

Mr. Aryan is a native and citizen of Afghanistan. Dkt. 1, ¶ 25. He previously worked with the United States consulate in Kabul, Afghanistan and on August 24, 2021, was paroled into the U.S. at the Dulles International Airport port of entry. *Id.* at ¶¶ 25, 27; dkt. 6-1 at 1. He has not left the country since, dkt. 1, ¶ 25, but has sought authorization for employment in the country and an application for temporary protected status, dkt. 6-1 at 9. On July 24, 2026, he applied to register his permanent residence. *Id.* He also filed an asylum application, has a pending application for a

Special Immigrant Visa with U.S. Citizenship and Immigration Services, is married to a U.S. citizen who has petitioned for Mr. Aryan's permanent residence, and has no criminal record. Dkt. 1 at ¶¶ 26–28, 30.

Mr. Aryan's parole was scheduled to expire on August 23, 2025. Dkt. 6-1 at 11. But on July 24, 2025, he was served a Notice to Appear that terminated his parole, placed him into removal proceedings, and charged him as "an arriving alien." *Id.* at 1. The Notice to Appear charges Mr. Aryan as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document . . . and a valid unexpired passport, or other suitable travel document, or document of identity and nationality." *Id.*

On August 20, 2026, the U.S. Department of Homeland Security prepared an arrest warrant for Mr. Aryan. *Id.* at 5. He was served with the warrant while attending an immigration fingerprinting appointment on August 26, 2026; detained by ICE officers; and taken to the Naperville (Illinois) Police station before being transported to the Broadview Processing Center. *Id.* at 8–9; dkt. 1 at ¶ 31. He is presently detained at the Clay County Jail in Brazil, Indiana. Dkt. 1 at ¶¶ 11. 19.

Mr. Aryan has not moved for or been given a custody re-determination hearing. *Id.* at ¶¶ 36, 69. He has a hearing before an immigration judge scheduled for October 30, 2026. Dkt. 6-1 at 12.

## II. Discussion

Mr. Aryan claims that his current detention without bond violates the Due Process Clause of the Fifth Amendment (Count I) and the Immigration and Nationality Act ("INA") (Count II). Dkt. 1 ¶¶ 60–72. Respondents argue that Mr. Aryan is an "arriving alien" and, as such, is not

entitled to a bond hearing; that his due process rights have not been violated; and that he is not entitled to immediate release. Dkt. 6.

Consistent with this Court's previous orders, Mr. Aryan's detention is governed by 8 U.S.C. § 1226(a) and is unlawful because he has not been afforded a bond hearing. Accordingly, the Court orders Respondents to afford him a bond hearing or release him from detention.

**A. *Cirrus Rojas***

On July 30, 2026, the Seventh Circuit decided *Cirrus Rojas v. Olson*, 183 F.4th 909 (7th Cir. 2026). In *Cirrus Rojas*, the Seventh Circuit determined that 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention scheme applies only to noncitizens who are "seeking admission" to the United States: "Aliens present in the country without admission and not 'seeking admission' fall under Section 1226, not Section 1225(b)(2)(A), and are eligible for bond hearings subject to the INA's other requirements." *Id.* at 915. "Admission means 'lawful entry . . . into the United States after inspection and authorization.'" *Id.* at 918 (quoting *Sanchez v. Mayorkas*, 593 U.S. 409, 411 (2021)). "The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1239 (10th Cir. 2026), *quoted in Cirrus Rojas*, 183 F.4th at 920.

Mr. Aryan was arrested in Chicago years after his entry when he appeared for an immigration check-in. Dkt. 6-1 at 8. He was not then, and is not now, seeking to enter the United States at the border. Mr. Aryan sought asylum, which is a lawful status different from admission. *See Cirrus Rojas*, 183 F.4th at 914 ("Cirrus Rojas is not seeking admission: the relief he now seeks, asylum and withholding of removal, is not admission as the statute and Supreme Court case law use that term."). Further, Mr. Aryan's immigration record shows he may be categorically inadmissible because he is charged under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as not

possessing valid documentation required under the INA. Dkt. 6-1 at 1; *see Cirrus Rojas*, 183 F.4th at 914–15. He is not "seeking admission" as *Cirrus Rojas* applies the phrase. Therefore, under the now-settled law of this Circuit, Mr. Aryan's detention cannot be governed by § 1225(b)(2)(A) and is not mandatory.

Respondents argue that *Cirrus Rojas* does not apply here because that case "involved a petitioner who entered the United States without inspection or admission in 2018 and who did not present himself at a port of entry." Dkt. 6 at 2 n.1. To the extent that these facts distinguish *Cirrus Rojas* from this case, Respondents have not persuaded the Court that the distinction is legally significant. The bottom line of *Cirrus Rojas* is that § 1225(b)(2)(A) applies only to applicants for admission who are *actually seeking admission*. Respondents do not explain how Mr. Aryan is actively seeking admission any more than Cirrus Rojas was when he was arrested in the interior of the United States without active parole or any other legal status.

**B. Effect of Parole Termination**

Respondents argue that Mr. Aryan is subject to mandatory detention under § 1225(b)(2)(A) because he became an "arriving alien" when his parole was terminated on July 24, 2025. Dkt. 6 at 2–6. Mr. Aryan counters that he is not an "arriving alien." Dkt. 8 at 7–8. Another court in this district has rejected Respondents' argument. *See, e.g.*, *Tologonov v. Warden*, No. 2:26-cv-00413-JPH-MJD, dkt. 14 at *10–13 (S.D. Ind. July 10, 2026). This Court agrees with the reasoning in *Tologonov* and rejects Respondents' argument.

The Secretary of Homeland Security may permit a noncitizen to enter the United States on parole according to 8 U.S.C. § 1182(d)(5)(A). "[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien *shall forthwith return or be returned to the custody from which he was paroled*." *Id.* (emphasis added). Additionally, the

former parolee "shall continue to be dealt with in the same manner as that of *any other applicant for admission* to the United States." *Id.* (emphasis added).

Respondents urge the Court not to follow the holding of *Tologonov* and instead argue that the "custody from which" Mr. Aryan "was paroled" was that of an "arriving alien" as defined by 8 C.F.R. § 1001.1(q). Dkt. 6 at 5–7. That regulation provides that an arriving alien is "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1001.1(q). "An arriving alien remains an arriving alien even if paroled . . . and *even after any such parole is terminated or revoked*." *Id.* (emphasis added). In short, as Respondents see it, Mr. Aryan's parole permitted him to physically enter the United States, but he never ceased to be—for legal purposes—an arriving alien and applicant for admission at a port of entry. When his parole was terminated, he reverted to that position by operation of the INA and became, once again, subject to compulsory detention under § 1225(b)(2)(A).

Respondents' position cannot be squared with *Cirrus Rojas*. Section 1225(b)(2)(A) does not mandate the detention of "arriving aliens" as defined by regulation or even "applicants for admission" as referenced in § 1182(d)(5)(A). Section 1225(b)(2)(A) applies only to an applicant for admission *who is also seeking admission*—which is to say a person actually seeking lawful entry into the United States after inspection and authorization at a border. *Cirrus Rojas*, 183 F.4th at 914.

Respondents' reliance on 8 C.F.R. § 1001.1(q)—an agency regulation—is misplaced. Its sole legal significance is to clarify how the agency applies the term "arriving alien." Through § 1225(b)(2)(A), Congress authorized the government to subject specified noncitizens to automatic, indefinite detention during removal proceedings. In *Cirrus Rojas*, the Seventh Circuit interpreted that authority as extending only to noncitizens actually seeking admission. The

government cannot expand its congressionally granted authority by pointing to a definition in its own regulations.

Finally, this Court agrees with the reasoning in *Tologonov* interpreting § 1182(d)(5)(A) as directing only that a former parolee be returned to the custody—but not necessarily the detention—from which he was paroled. *See Tologonov*, dkt. 14 at *12–13 (discussing *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025)); *see also Chirinos v. Mullin*, No. 26-CV-369, 2026 WL 905416, at *3 (E.D. Wis. Mar. 30, 2026) ("The word 'custody' [in § 1182(d)(5)(A)] should not be read to mean 'detention' when Congress could have chosen to say 'detention' but did not."). This means Mr. Aryan has lost the benefits associated with parole and must be treated as any other noncitizen arrested in the interior of the United Sates pursuant to a warrant authorized by § 1226. That Mr. Aryan's parole was terminated does not mean he is now "seeking admission" such that he is subject to compulsory detention under § 1225(b)(2)(A). Rather, pursuant to *Cirrus Rojas*, Mr. Aryan's detention is governed by § 1226(a), and he is eligible for discretionary release on bond.

## III. Scope of Relief

Mr. Aryan argues that he is entitled to immediate release from custody, which is the customary remedy in habeas proceedings. *See DHS v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). The Court finds that immediate release would not be in the interests of justice here. The Court has found that Mr. Aryan is subject to § 1226(a), which gives the government discretion to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Mr. Aryan's custody is therefore not unlawful because he is detained but because he has not received the bond hearing that the law requires.

Because the Court has found that Mr. Aryan's detention violates the INA, it does not reach his argument that his detention violates the Fifth Amendment. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").

## IV. Conclusion

The petition for a writ of habeas corpus is **granted** insofar as Respondents will have **ten days**[1] to either (1) provide Mr. Aryan with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations, or (2) release him from detention under reasonable conditions of supervision. Respondents must notify Mr. Aryan's counsel of the setting of any bond hearing. Respondents must file documentation certifying that they have either provided the bond hearing or released Mr. Aryan within **two days** after the hearing or his release, whichever is applicable.

The petition is **denied** to the extent it seeks immediate release.

The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Dated: September 22, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

[1] The parties may extend this deadline by agreement without need for further action by the Court.

Distribution:

Maya Flores
Kriezelman Burton & Associates, LLC
mflores@krilaw.com

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Paul Umbaugh, IV
DOJ-USAO
paul.umbaugh@usdoj.gov